IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DANIEL P. CAMPBELL #1137358 | § | |
| v. | § | CIVIL ACTION NO. 6:11cv396 |
| RICK THALER, ET AL. | § | |

MEMORANDUM OPINION AND PARTIAL ORDER OF DISMISSAL

The Plaintiff Daniel Campbell, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this lawsuit under 42 U.S.C. §1983 complaining of alleged deprivations of his constitutional rights. The lawsuit has been assigned to the docket of the undersigned United States Magistrate Judge for entry of final judgment pursuant to 28 U.S.C. §636(c).

Campbell names as defendants TDCJ Director Rick Thaler, Prison Rape Elimination Act ombudsman Ralph Bales, Beto Unit Warden Chuck Biscoe, and two TDCJ officers, Raymond Luna and Thalia Busby. At the evidentiary hearing, he named two other officers, Bradley Yancy and David Johnson, whom he said had been deliberately indifferent to his safety.

Campbell stated that while in the free world, he joined a gang called the Latin Kings, and had a crown tattoo on his leg as a symbol. On one occasion when he went to prison, he became affiliated with another gang, called the Tango Blast, and got a tattoo which read "stay blasting." The next time he returned to TDCJ, in his present incarceration, he decided that he did not want to get involved in gang activities.

While Campbell was at the Larry Gist Unit, other inmates in the Tango Blast saw the "stay blasting" tattoo, but became angry when Campbell said that he did not want to get involved with them. They threatened him, and so he was transferred to the Beto Unit, where the claims in the present lawsuit took place.

1

At the Beto Unit, Campbell says that he was called into the gang intelligence office because he was known to be a member of the Latin Kings. He told the officers about the threats he had received from the Tango Blast, but they laughed at him. Campbell identified Luna, Busby, Yancy, and Johnson as the officers who were present.

Campbell stated that officers told him that he "had been fed a bunch of crap" when the officials at the Gist Unit told him that he would be protected.. They said that Latin King members were being assaulted by the Tango Blast at the Beto Unit, and called a Tango Blast leader named Upton into the office. The officers told Upton that they were going to have to send Campbell to the general population and asked him to "go easy" on Campbell when he got there. As he was leaving the office, Campbell said, Luna and Yancy told him that "they would see him in a few days, with a black eye and a busted lip, and he'd be all right." The officers also told him that they were "not there to protect inmates but to protect society from you." While in the office, Campbell said, Upton told him that he, Campbell, "knew the consequences" and "knew what was going on."

Campbell said that he wanted to refuse housing but he knew that he would be forced to go, so he went to general population. The Tango Blast was waiting for him; three inmates took him into a cell, beat him severely, and sexually assaulted him with a walking cane.

After the attack, Campbell said that photographs were taken and a rape kit was done. He was placed in segregation and filed grievances, but did not get responses. He was also transferred off of the Beto Unit. The Office of the Inspector General later told him that the matter had been resolved because Luna had been fired and Campbell had been transferred.

Warden Dewberry, a TDCJ official present at the evidentiary hearing, confirmed that Raymond Luna had been fired, and said that Busby no longer worked for TDCJ. He said that if an inmate has gang tattoos but claims that he is no longer a member, a life endangerment investigation is supposed to be done. If the allegations are confirmed, the inmate will be placed in transient status and seen by the Unit Classification Committee. Dewberry stated that there are a number of Tango Blast members at the Beto Unit but it is not considered a "security threat group," and noted that it

would be improper for officers to call a Tango Blast member into the office under the circumstances described by Campbell.

Nurse Maxwell, a TDCJ correctional nurse present at the hearing, testified that Campbell was seen on July 31, 2009, which was apparently a couple of days after the assault. At this time, Campbell had multiple bruises and tenderness consistent with anal penetration, although there was no blood in the feces, which otherwise appeared normal.

Campbell testified that he sued TDCJ Director Rick Thaler because Thaler is responsible if he does not take action. He likened his theory to the scandal at Penn State University, saying that head coach Joe Paterno was considered responsible and fired for failure to act. Similarly, he said that he was suing Warden Biscoe because the warden was supposed to make sure that the prison departments are run correctly. He complained that Bales, the ombudsman, told him that there was insufficient evidence to support his claims, and said that Bales had the duty to "conduct a proper investigation."

## The TDCJ Records

The prison records show that on July 30, 2009, Campbell was assaulted by three Hispanic inmates associated with the Tango Blast. The sexual assault kit showed "no trace evidence" to pursue sexual assault charges, although when Campbell regained consciousness from the assault he found that he had defecated in his boxers.[1] Major Owens investigated Campbell's claim that Luna had brought Upton into the discussion, and as a result of this investigation, Luna was demoted from a sergeant to a CO-5 and reassigned to the Michael Unit.

The records contain an inter-office communication from Luna to Owens, acknowledging that he, Luna, summoned Upton during the interview with Campbell. He explained that Upton "has worked with the Beto Security Threat Group Office in the past" to resolve situations between the Latin Kings and the Tango Blast. Upton told Campbell that he would not have any trouble at the

---

[1] The lab report explains that no semen or spermatozoa were found in a rectal smear, which is not inconsistent with Campbell's allegation that he was assaulted with a walking cane.

Beto Unit as long as he did not associate with the Latin Kings or their allies, and to "be sure to represent Tango 100 percent only." Luna said that Campbell "appeared relieved" and "expressed gratitude" to the Security Threat Group Office and to Upton for the information. Communications from Bradley Yancy, David Johnson, and Thalia Busby confirm that this event took place.

Legal Standards and Analysis

In Stokes v. Delcambre, 710 F.2d 1120, 1127 (5th Cir. 1983), the jailers at the Vermillion Parish Jail made clear that they expected the plaintiff to be assaulted and were unconcerned about it. The Fifth Circuit held that this conduct amounted to deliberate indifference and upheld the jury's verdict and award of damages.

In the present case, Campbell alleges that Luna, Busby, Yancy, and Johnson made light of his claims that he was in danger and even summoned a leader of the gang whom Campbell said was threatening him, thereby letting this gang leader know that Campbell had been discussing the Tango Blast with prison officials. Campbell's claims against Luna, Busby, Yancy, and Johnson are not frivolous, but require further judicial proceedings.

Campbell also sues TDCJ Director Rick Thaler and Warden Chuck Biscoe, stating that these persons were in charge and therefore responsible for the actions of their subordinates. He does not allege that either Thaler or Biscoe had any personal knowledge of the incidents forming the basis of the lawsuit.

The Fifth Circuit has held that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. Williams v. Luna, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).

In this case, Campbell has not shown that Thaler or Biscoe were personally involved in a constitutional violation or that a causal connection exists wrongful conduct by them and a constitutional violation. Nor has he shown that either Thaler or Biscoe implemented a constitutionally deficient policy which was the moving force behind a constitutional deprivation; on the contrary, Warden Dewberry testified that it would be improper to summon a gang leader to an interview with another inmate in the manner which Campbell described. Campbell has not shown any basis for liability on the part of Thaler or Biscoe.

Campbell also complained that Bales, the Prison Rape Elimination Act ombudsman, did not conduct a proper investigation. The Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also* Edmond v. Martin, et al., slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue); Thomas v. Lensing, et al., slip op. no. 01-30658 (5th Cir., Dec. 11, 2001) (unpublished) (same).

Similarly, inmates do not have a liberty interest in having investigations conducted to their satisfaction. As noted above, a rape kit was taken, and the laboratory reported that there was no evidence of sexual assault. While this conclusion may have been in error, since Campbell did not allege a sexual assault of the type which would leave DNA evidence, the fact that Bales agreed with this conclusion and determined that there was insufficient evidence to support a finding of sexual assault does not show a constitutional violation. Because Campbell does not have a liberty interest in having Bales conduct an investigation to his satisfaction, his claim against Bales is without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any

portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 at 327, *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Campbell's claims against Thaler, Biscoe, and Bales lack any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, these claims may be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the Plaintiff's claims against the Defendants Rick Thaler, Chuck Biscoe, and Ralph Bales be and hereby are DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. 28 U.S.C. §1915A. It is further

ORDERED that these Defendants are hereby DISMISSED as parties to this lawsuit. The dismissal of these claims and Defendants shall have no effect upon the remaining claims in the lawsuit. Finally, it is

ORDERED that the dismissal of these claims and Defendants shall not count as a strike for purposes of 28 U.S.C. §1915(g).

So **ORDERED** and **SIGNED** this **6** day of **January, 2012.**

JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE